IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

PATRICIA JOHNSTON                                        PLAINTIFF

    v.            Case No. 05-1034

HARTFORD LIFE AND
ACCIDENT INSURANCE CO.                                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.,* against the Defendant, her disability insurance provider, Hartford Life and Accident Insurance Co. (hereinafter "Hartford" or "Defendant"). She seeks total disability benefits from February 21, 2004 and forward as provided under the policy, a declaration that she is totally disabled under the terms of the policy, reasonable attorney fees, and pre-judgment and post-judgment interest.

Plaintiff challenges Defendant's termination of her benefits under her employer's, Wal-Mart Stores, Inc., group disability insurance policy provided by Defendant (hereinafter "Group Plan").[1] The matter is before the Court on the Stipulated Administrative Record and the parties' briefs. (Exhibit A, Doc. 10, Doc. 13.) For the reasons set forth

---

[1] Plaintiff was under two plans provided by Defendant: GLT-205215 and GLT-24554.

herein, we REVERSE the plan administrator's decision to deny benefits.

**A.  Background**

Plaintiff began employment with Wal-Mart in 1989, primarily as a cashier. (AR 175.) While working as a cashier, she was required to walk and stand regularly, use her hands to scan items and operate a keyboard, and frequently lift or move items weighing 10 to 50 pounds. (AR 219-222.) During her employment, she was included within coverage of Wal-Mart's group disability insurance policy provided by Defendant. The insurance policy included short and long term benefits for total disability.

In 2001, Plaintiff underwent bilateral unicompartmental knee replacement[2] as a result of osteoarthritis in both knees.[3] (AR 207.) For this condition, Plaintiff has been under the care of Dr. Mark Malloy, a doctor of internal medicine, since 1999. (AR 207.) Dr. Malloy was Plaintiff's treating physician throughout the actions giving rise to this complaint.

---

[2]Plaintiff had her right knee replaced in March 2001 and her left knee in May 2001.

[3]"Osteoarthritis" is arthritis characterized by "erosion of articular cartilage, either primary or secondary to trauma or other conditions, which becomes soft, frayed, and thinned with eburnation of subchondral bone and outgrowths of marginal osteophytes; pain and loss of function result; mainly effects weight-bearing joints." *See PDR Medical Dictionary* 1267 (1st ed. 1995).

As a result of the knee surgery, Plaintiff received short term disability (STD) benefits through August 19, 2001. (AR 121.) On August 20, Plaintiff returned to work. (AR 119-120.) Continued pain and swelling after surgery forced Plaintiff to quit her job for good on August 9, 2002 and, sometime later, undergo a second surgery on each knee.[4] (AR 129, 188.) Plaintiff was again awarded STD benefits, effective August 24, 2002. (AR 116.)

At Defendant's request, Dr. Malloy completed a "Physical Capacities Evaluation Form" on September 25, 2002. ("September 2002 PCE")(AR 232-234.) On this form, Dr. Malloy stated that: Plaintiff should not sit for more than two hours in any given workday and no more than an hour at a time; she should not stand, walk, or drive for more than an hour a day; and she should not work for more than an hour in any given day. Taking Dr. Malloy's information into account, Defendant revoked Plaintiff's STD benefits effective September 30, 2002.[5] (AR 114.) Plaintiff appealed this determination and, on December 19, Defendant reinstated Plaintiff's STD benefits through February 21, 2003. (AR 112.)

---

[4] The record is vague as to when exactly this second surgery took place. All that is clear is that it was sometime before September, 2003.

[5] The letter informing Plaintiff that her benefits would expire on September 30, 2002 was written October 3, 2002.

3

Plaintiff applied for long term disability (LTD) benefits, which Defendant initially approved on February 7, 2003. (AR 108-109.) This determination was based, at least in part, on Dr. Malloy's completion of an "Attending Physician's Statement of Disability", dated January 7, 2003. ("January 2003 APS")(AR 207-208.) The January 2003 APS stated, in relevant part, that Plaintiff should not stand, drive, or walk for more than an hour a day, and should not lift, reach, push, or pull at all. Under "Sitting", Dr. Malloy wrote only "-". No further comments were made. (AR 208.)

Later in February 2003, Plaintiff was awarded Social Security disability benefits in the amount of $563.50 per month. (AR 194.) On August 29, 2003, Defendant notified Plaintiff that it was investigating her claim in order to decide if her claim would continue to qualify for LTD benefits under the Group Plan's changing terms. (AR 106-107.) The old Group Plan terms, under which Defendant initially awarded Plaintiff LTD benefits, required Plaintiff to be totally disabled and unable to perform "the essential duties of *your* occupation". The new terms required Plaintiff to be totally disabled and unable to perform "the essential duties of *any* occupation". (AR 106)(emphasis added)(hereinafter "any occupation" standard.)

As part of its investigation, Defendant once again asked

Dr. Malloy to complete an Attending Physician's Statement of Disability. ("September 2003 APS".) Dr. Malloy completed this form and returned it to Defendant on September 10, 2003.Dr. Malloy listed as limitations that the Plaintiff should stand not stand or walk for more than an hour and should not lift anything. Dr. Malloy made no other comments. (AR 145-146.)

Defendant then conducted its employability analysis on Plaintiff. (AR 179-182.) The results of this analysis state that Plaintiff could still be employable in "sedentary" jobs, or those that required "mostly sitting". (*Id.*) According to Defendant, the Plaintiff could do any of four jobs: telephone solicitor, charge account clerk, food and beverage order clerk, or surveillance system monitor. (*Id.*) On October 17, Defendant requested that Dr. Malloy confirm that Plaintiff could manage these jobs. (AR 104-105.)

On his reply to Defendant, dated October 22, someone in Dr. Malloy's office included a handwritten note that stated, "Dr. Malloy said he agreed no need to send further reports." (AR 143-144)(emphasis in original.)

On January 28, 2004, Defendant notified Plaintiff that she would no longer be entitled to LTD benefits, effective February 21. (AR 100-103.) Plaintiff appealed this decision and, in a letter received by Defendant on February 17, informed Defendant that their conclusion that she could work sedentary occupations

5

was in conflict with what her physician, Dr. Malloy, had reported to her. She also stated that none of the listed jobs were available in her area. (AR 156.) Dr. Malloy sent a letter to Defendant, dated February 17, 2004, confirming Plaintiff's account. This letter stated that Plaintiff could not work "any job" and that she could not sit for any length of time. (AR 159.)

Defendant rejected Plaintiff's appeal on March 18, 2004. (AR 98-99.) Dr. Malloy re-sent the February 17, 2004 letter to Defendant on September 21, 2004. (AR 140.) Defendant responded that it had received the letter, but that it's position remained unchanged and Plaintiff did not qualify for LTD benefits under the "any occupation" standard of the Group Plan. (AR 97.) Plaintiff has exhausted her administrative remedies and filed this suit.

### B. Standard of Review

The Employee Retirement Income Security Act of 1974 (ERISA) affords a plan beneficiary the right to a judicial review of a benefits determination. *See* 29 U.S.C. § 1132(a)(1)(B). Such cases are not to be determined under the standard for granting summary judgment pursuant to Federal Rule of Civil Procedure 56(c). *See Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). The Court must decide whether benefits were properly denied based on a

review of the record presented to the administrator under the appropriate standard. *See id.* Accordingly, the plan administrator's decision to deny benefits must be upheld if "reasonable; *i.e.*, supported by substantial evidence." *See Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996). Further, if supported by substantial evidence, such a denial "should not be disturbed even if a different, reasonable interpretation could have been made." *See Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997).

If a benefits plan allows the administrator discretionary authority to determine eligibility for benefits or to construe the plan, the Court reviews the plan administrator's decision only for an abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998). This standard may give way to a less deferential one if Plaintiff can show that the administrator's decision was influenced by a conflict of interest or serious procedural irregularity. *See Woo v. Deluxe Corp.*, 114 F.3d 1157, 1161 (8th Cir. 1998).

In the present case, Plaintiff acknowledges that the LTD Plan gives the Hartford discretionary authority to administer, apply, and interpret the plan. (Doc. 10 pp. 5-6.) Plaintiff asks the Court to assume a conflict of interest by Defendant because it is both the claim insurer and administrator. (Doc.

10 p. 6.) However, in order to find a conflict of interest and thus alter the standard of review, Plaintiff must present "material, probative evidence demonstrating that a palpable conflict of interest existed, which caused a serious breach of the administrator's fiduciary duty." *Farley v. Blue Cross & blue Shield*, 147 F.3d 774, 776 (8th Cir. 1998). Plaintiff offers no such evidence and the Court reviews the plan administrator's decision for an abuse of discretion.

**C. Discussion**

Plaintiff asserts two theories of recovery: Defendant ignored relevant medical information with regard to Plaintiff's classification as totally disabled under the "any occupation" standard; and Defendant improperly relied on its Employability Analysis in defining which jobs Plaintiff could adequately perform.

<u>1. Consideration of All Medical Information</u>

Plaintiff contends Defendant placed undue emphasis on Defendant's 2003 correspondence with Dr. Malloy when it denied Plaintiff's request for continued LTD benefits. Specifically, Plaintiff contends Defendant relied solely on the handwritten note attached to Hartford's October 2003 letter and the January 2003 APS, wherein Dr. Malloy indicated a "-" when asked the length of time Plaintiff could sit. (Doc. 10 p. 10.) Plaintiff further contends Defendant ignored the parts of the

8

record demonstrating Plaintiff's disability, primarily Dr. Malloy's February 2004 letter and the September 2002 PCE. (*Id.* at pp.7-8.)

Defendant states the plan administrator's decision to deny LTD benefits was proper, since Plaintiff's condition did not meet the definition of total disability under the "any occupation" standard as construed by it. Defendant offers no opposing medical testimony, and relies heavily on the January 2003 APS. Defendant states only that Dr. Malloy's February and September 2004 letters are "outside the scope of medical care." (AR 99.)

Parties dispute the weight to be given the information provided by Dr. Malloy, as Plaintiff's treating physician. Defendant states correctly that "the treating doctor's opinion must be considered along with all the other evidence that supports or refutes it." (Doc. 13 p. 11)(citing *Black & Decker Disability Plan v. Nord*, 123 S.Ct. 1965 (2003).) Defendant must also be aware, then, that plan administrators may not "arbitrarily refuse to credit a claimant's reliable evidence, including the opinion of a treating physician." *Black & Decker Disability Plan*, 123 S.Ct. At 1967. As Dr. Malloy's correspondence is the only medical evidence available, Defendant may not arbitrarily refuse to consider other parts of his correspondence. While deference is due the plan

9

administrator's decision, that decision must be based on the evidence presented. Defendant has failed to show that it properly considered all the evidence in the record.

Defendant states that Dr. Malloy's February 2004 letter was his "first mention of an impact on the amount of time that Johnston could sit based on her weakened knees." (Doc. 13 p. 6.) This representation of the record is less than correct. Defendant ignores the September 2002 PCE, wherein Dr. Malloy first stated that Plaintiff could not sit for more than two hours total, and no more than an hour at a time. (AR 233-234.) Defendant then characterized Dr. Malloy's restriction, in the February 2004 letter, on Plaintiff's sitting as a "*brand new restriction.*" (Doc. 13 p. 10)(emphasis in original.)

For this "brand new restriction" characterization, Defendant relies on the January 2003 APS, wherein Dr. Malloy wrote a "-" for restrictions on sitting. (AR 233.) Defendant describes as "inconceivable" the suggestion that Dr. Malloy forgot to list Plaintiff's sitting restrictions on the January 2003 APS. (Doc. 13 p. 10.) Yet, eight months later, that is precisely what Dr. Malloy did. On the September 2003 APS, Dr. Malloy simply left blank the area provided for sitting restrictions. (AR 145-146.) On this APS, Dr. Malloy also left blank the spaces for pushing, pulling, and driving - all restrictions that had been listed in the January 2003 APS. (AR

10

146, 208.) Yet, Defendant makes no assertion that Plaintiff can successfully perform any of these activities.

While a plan administrator is not automatically required to accord deference to the treating physician, the administrator cannot fail to consider Plaintiff's reliable evidence from her treating physician's opinions, especially when no other medical evidence is offered. *See Burch v. Hartford Life & Acc. Ins. Co.*, 383 F. Supp. 2d 1119, 1126 (W.D. Ark. 2005)(plan administrator's failure to consider Plaintiff's physicians' opinions by relying only on one independent reviewing physician was an abuse of discretion). Defendant's odd characterization of the January 2003 APS, its avoidance of the September 2002 PCE, and the lack of contradicting objective medical evidence, make Defendant's denial of Plaintiff's LTD benefits an arbitrary and capricious one, with the Defendant paying selective attention to only part of the available evidence.

The Court further finds Defendant's argument that Dr. Malloy's opinion (that Plaintiff was unable to work "any job", expressed in the February and September 2004 letters) was "outside the scope of medical care," is without merit. Defendant had previously, expressly asked Dr. Malloy for his expert judgment on how much Plaintiff should be allowed to work. (AR 234.) Dr. Malloy, in the September 2002 PCE,

11

answered this question. In October 2003, Defendant once again asked Dr. Malloy to "determine if you concur that [the occupations provided by Defendant's employability analysis] are performable by Ms. Johnston." (AR 166.) In light of these previous expressions of confidence in Dr. Malloy's ability to judge Plaintiff's fitness for work, Defendant can not now arbitrarily dismiss his conclusions.

All of Plaintiff's physician's correspondence restricted her standing and walking ability, and the treating physician reiterated that she had serious restrictions on sitting as well. Dr. Malloy stated Plaintiff could not perform the duties of any job, because Plaintiff could not sit, stand, walk, or lift for "any length of time necessary to hold a job." (AR 159.) Applying the abuse of discretion standard in ERISA matters, the Court must determine whether a reasonable person could arrive at the same conclusion as the plan administrator. *See House v. Paul Revere Life Ins. Co.,* 241 F.3d 1045, 1048 (8th Cir. 2001). The Court finds that based on the facts set out above, a reasonable person could and would not arrive at the same conclusion; therefore, it was an abuse of discretion by the plan administrator to deny Plaintiff LTD benefits.

### 2. Defendant Relied Improperly On Its Employability Analysis

Plaintiff contends Defendant improperly relied on an

12

Employability Analysis. Utilizing this procedure, Defendant entered restrictions into a computer program that searches 12,741 occupations classified by the U.S. Department of Labor in the 1991 DOT. Of these 12,741 occupations, Defendant selected four that it believed Plaintiff had the requisite capacity to perform. Of these four, one occupation was at the "Good" level and three at the "Fair" level. (AR 177.) Plaintiff argues that the Defendant failed to take into account Plaintiff could not perform a regular or consistent work schedule, and that her condition was permanent. Defendant argues that there is substantial evidence that Plaintiff could work a sedentary job as long as she could sit all day and shift posture. Assuming, arguendo, that Plaintiff is capable of sedentary work, Defendant's employability analysis remains flawed.

Defendant contends Plaintiff could work a sedentary job as long as she could sit all day and shift posture, but this conclusion is contrary to the attending physician's limitations. Moreover, the Court finds it highly unlikely that Plaintiff could obtain one of the four of 12,741 occupations, while only being able to work, at most, one hour a day[6], and

---

[6] The Court notes that the last time any physician was actually asked how long Plaintiff could work in any given day, was in the September 2002 PCE, and the answer was less than one hour per day.

13

being permitted to have her feet elevated often throughout the day.

More curious than Defendant's disregard of the complete medical record are the changes Defendant made to Plaintiff's "Ability Profile" on October 6, 2003. (AR 176.) These changes included a downgrade on "Physical Demands" from "Light" to "Sedentary." (*Id.*) We note with interest the unexplained changes to Plaintiff's "General Educational Development." (*Id.*)(Where Defendant upgraded Plaintiff's "Mathematics" and "Language" categorizations from "2 Grades 4-6" to "3 Grades 7-8".) One can only assume that Plaintiff's knee surgeries did not make her significantly more intelligent. The importance of these changes becomes apparent when one looks into the occupations for which Defendant recognized Plaintiff might still be capable. The "Occupational Requirements" for all four occupations require "General Learning Ability", "Verbal Aptitude", and "Numerical Aptitude" of at least a category three. (AR 179-182.) Defendant provided no occupations for which Plaintiff would have qualified under the prior category two.

The Court finds that Defendant improperly relied on its employability analysis and abused its discretion in classifying Plaintiff under the "any occupation" standard of the Group Plan. Defendant made undocumented changes to Plaintiff's

14

employability profile that have no connection whatsoever to her disability and illness. The Court can only conclude that Defendant's decision was not based upon substantial evidence, and consequently arbitrary, and an abuse of discretion.

### 3. Other considerations

Plaintiff began receiving Social Security benefits due to her disability on March 17, 2003. (AR 194.) Although the Social Security Administrator's determination is not binding on this Court, it is relevant admissible evidence to support an ERISA claim for long-term disability benefits. *See Riedl v. General American Life Insurance Company*, 28 F.3d 753, 759 n. 4 (8th Cir. 2001); *Duffie v. Deere & Co.*, 111 F.3d 70, 74 n. 5 (8th Cir. 1997).

### D. Attorneys' Fees

A district court has discretion to award attorneys' fees under ERISA. *See Sheehan v. Guardian Life Ins. Co.,* 372 F.3d 962, 968 (8th Cir. 2004); *Lawrence v. Westerhaus,* 749 F.2d 494, 494 (8th Cir. 1984).

"When considering whether to award such fees, the 8th Circuit has set forth general guidelines for district courts to follow, including the five factors set forth in *Westerhaus*." *Id.* These factors include:

(1) the degree of the opposing parties' culpability or bad

15

faith;

(2) the ability of the opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question [sic] regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*Westerhaus,* 749 F.2d at 496 (alteration in original); *Sheehan*, 372 F.3d at 968.

Reviewing the relevant considerations, this Court finds that Plaintiff is entitled to fees and costs. First, the Plan Administrator's decision was a clear abuse of discretion. Second, there is nothing before the Court to indicate that Defendant would be unable to pay fees and costs. Third, the award in this instance would help deter such abuse of discretion in the future. Fourth, by example, Plaintiff's action benefits all Group Plan participants by providing judicial interpretation of "total disability" under the policy. Finally, the relative merits of the case clearly favor the

16

Plaintiff. Accordingly, Plaintiff is entitled to attorneys' fees and costs, and Plaintiff is directed to submit to the Court a proposal for reasonable attorneys' fees and costs.

**E. Prejudgment Interest**

"Prejudgment interest awards are permitted under ERISA where necessary to afford the Plaintiff 'other appropriate equitable relief' under section 1132(a)(3)(B)." *Kerr v. Charles F. Vattervott & Co.,* 184 F.3d 938, 945 (8th Cir. 1999). One purpose of the remedy is to compensate the prevailing party for financial damages incurred. *Id*. At 946. Another important purpose is to "promote settlement and deter attempts to benefit unfairly from the inherent delays of litigation." *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir.), *cert. denied*, 476 U.S. 1141(1986). "A common thread throughout the prejudgment interest cases is unjust enrichment- the wrongdoer should not be allowed to use the withheld benefits or retain interest earned on the funds during the time of the dispute." *Kerr,* 184 F.3d at 946. Based on these considerations Plaintiff should be awarded prejudgment interest to make her whole, and to promote settlement on behalf of the Defendant. Finally, Plaintiff would not be unjustly enriched by such an award. Accordingly, Plaintiff is entitled to prejudgment interest. The Court relies on 28 U.S.C. § 1961 to determine the appropriate rate of interest. *See Sheehan,*

17

*supra.* Plaintiff is awarded prejudgment interest at a rate of 5.22 percent compounded annually from February 21, 2004 to the date of this judgment.

**F. Post-judgment Interest**

Under 28 U.S.C. § 1961, district courts are required to award post-judgment interest. The statute provides that "[such] interest shall be calculated from the date of the entry of judgment," and "shall be computed daily to the date of payment." 28 U.S.C. § 1961(a), (b). The statute "mandates the imposition of post-judgment interest, thus removing the award of such interest from the discretion of the District Court." *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 989 (6th Cir. 1982). The federal post-judgment interest statute allows interest on "all money judgments," including those in ERISA cases. *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 810 (6th Cir. 2002). Moreover, Plaintiff is entitled to post-judgment interest on this Court's award of prejudgment interest. See *Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002).

**G. Conclusion**

Based on the foregoing reasons, Plaintiff is entitled to a judgment against Defendant, and the decision to deny benefits is REVERSED, and this case is remanded to the plan

18

administrator for a benefits determination consistent with this opinion.

IT IS SO ORDERED, this 31st day of July, 2006.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge

AO72A
(Rev. 8/82)